1

2                    **UNITED STATES DISTRICT COURT**

3                          **DISTRICT OF NEVADA**

4    FRANCISCO ALVAREZ,                    Case No.: 2:20-cv-01894-KJD-VCF

5           Petitioner                    **Order Denying Petition, Denying
                                          Certificate of Appealability, and Closing
6    v.                                   Case**

7    WILLIAM HUTCHINGS,[1] *et al.*,

8           Respondents

9          In his *pro se* 28 U.S.C. § 2254 habeas corpus petition, Francisco Alvarez challenges his

10   conviction on several counts of burglary, robbery, and conspiracy, arguing that his trial counsel

11   and appellate counsel were ineffective. (ECF No. 6.) Respondents have answered Alvarez's

12   remaining claims. (ECF No. 40.) As discussed below, the petition is denied.

13   **I.      Background**

14

15         In July 2015, a jury convicted Alvarez of 4 counts of burglary while in possession of a

16   deadly weapon, 6 counts of conspiracy to commit robbery, 3 counts of robbery with use of a

17   deadly weapon, 2 counts of burglary, 2 counts of robbery, and 1 count of attempted robbery with

18   use of a deadly weapon. (Exhibit 29.)[2] The charges stemmed from several armed convenience

19   store robberies in Las Vegas (Clark County), Nevada that Alvarez committed with Bernardo

20

21   [1] According to the petition and the state corrections department's inmate locator page, Alvarez is
     incarcerated at Southern Desert Correctional Center ("SDCC"). The department's website reflects that
22   Gabriela Najera is the warden for that facility. At the end of this order, the court directs the Clerk to
     substitute Gabriela Najera for prior respondent William Hutchings, under, *inter alia*, Rule 25(d) of the
     Federal Rules of Civil Procedure.
23
     [2] The exhibits referenced in this order are exhibits to respondents' motion to dismiss, ECF No. 9, and are
     found at ECF Nos. 10-19, 21-22.

Dominguez and Verenise Robles in January 2015. (*See* ECF No. 40.) The state district court sentenced Alvarez to an aggregate term of 12 to 32 years. (Exh. 33.) Judgment of conviction was entered on September 30, 2015. (Exh. 34.)[3]

The Nevada Court of Appeals affirmed Alvarez's convictions in April 2016 and affirmed the denial of his state postconviction habeas corpus petition in July 2020. (Exhs. 46, 91.) Alvarez dispatched his federal habeas petition for filing about October 7, 2020. (ECF No. 6.) Several claims remain before the court:

3.1: The district court abused its discretion by holding that defense counsel was not ineffective under the Sixth Amendment for failing to:

a. raise an argument on direct appeal that there was insufficient evidence to support the finding of a firearm.

b. raise an argument on direct appeal that the surveillance video relating to 3 counts was improperly admitted.

c. challenge the denial of Alvarez's right to confront a witness against him on direct appeal.

d. raise an argument on direct appeal that there was insufficient evidence to support a robbery conviction.

e. raise an argument on direct appeal that the district court erred in denying Alvarez's motion to dismiss and motion for a directed verdict as to counts 7 through 9.

f. rebut the in-court identification of Alvarez with available evidence and in failing to consult with and present the testimony of an eyewitness identification expert.

g. rebut the in-court identification of Alvarez with available evidence and in failing to challenge the fingerprint evidence.
h. describe to Alvarez the evidence against him, rendering his refusal to take a plea not knowing, voluntary, or intelligent.

---

[3] The judgment of conviction erroneously listed the aggregate term as 10 to 27 years. An amended judgment of conviction was entered on September 15, 2017, that corrected the aggregate term to 12 to 32 years.

3.2: The district court abused its discretion by finding that there was no cumulative error. (ECF No. 6.)

Respondents have answered the remaining claims for relief. (ECF No. 40.) Alvarez did not reply to the answer.[4]

## II.     Legal Standard & Analysis
### a.     AEDPA Standard of Review

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if

---

[4] The answer was served on Alvarez at his address of record at SDCC. (*See* ECF No. 40.)

1  the state court identifies the correct governing legal principle from [the Supreme] Court's

2  decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75

3  (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state

4  court decision to be more than incorrect or erroneous. The state court's application of clearly

5  established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10)

6  (internal citation omitted).

7       The Supreme Court has instructed that "[a] state court's determination that a claim lacks

8  merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

9  correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)

10  (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that

11  even a strong case for relief does not mean the state court's contrary conclusion was

12  unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563

13  U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential

14  standard for evaluating state-court rulings, which demands that state-court decisions be given

15  the benefit of the doubt" (internal quotation marks and citations omitted)).

16       To the extent that the petitioner challenges the state court's factual findings, the

17  "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review.

18  *See, e.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the

19  federal courts "must be particularly deferential" to state court factual determinations. *Id*. The

20  governing standard is not satisfied by a mere showing that the state court finding was "clearly

21  erroneous." *Lambert*, 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

22       .... [I]n concluding that a state-court finding is unsupported by substantial
        evidence in the state-court record, it is not enough that we would reverse in
        similar circumstances if this were an appeal from a district court decision. Rather,
23      we must be convinced that an appellate panel, applying the normal standards of

appellate review, could not reasonably conclude that the finding is supported by
the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct
unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by
a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

**b.  Ineffective Assistance of Counsel**

Ineffective Assistance of Counsel ("IAC") claims are governed by the two-part test
announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court
held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating
that (1) the attorney made errors so serious that he or she was not functioning as the "counsel"
guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the
defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish
ineffectiveness, the defendant must show that counsel's representation fell below an objective
standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a
reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding
would have been different. *Id*. A reasonable probability is "probability sufficient to undermine
confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be
"highly deferential" and must adopt counsel's perspective at the time of the challenged conduct,
in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the
petitioner's burden to overcome the presumption that counsel's actions might be considered
sound trial strategy. *Id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient
performance of counsel resulting in prejudice, "with performance being measured against an

objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*.

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*. at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S. at 124. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under §

2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id*. at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id*. (internal quotations and citations omitted).

With respect specifically to appellate counsel, they do not have a constitutional obligation to raise every nonfrivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Part of counsel's role on appeal is to evaluate what arguments or issues are strongest and most central on which to focus and to winnow out weaker arguments. *Id*. at 751-52. Petitioner must show his counsel unreasonably failed to discover and raise nonfrivolous issues. *Delgado v. Lewis*, 223 F.3d 976, 980 (9th Cir. 2000) (citation omitted). The focus is not on what could have been done but on the reasonableness of what counsel did. *Williams v. Woodford*, 384 F.3d 567, 616 (9th Cir. 2004) (citation omitted). As to the prejudice requirement, petitioner must prove that but for counsel's errors, he would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citation omitted).

### III.    Trial Testimony[5]

---

[5] The court makes no credibility findings or other factual findings regarding the truth or falsity of evidence or statements of fact in the state court record. The court summarizes the same solely as background to the issues presented in this case, and it does not summarize all such material. No assertion of fact made in describing statements, testimony, or other evidence in the state court constitutes a finding by this court. Any absence of mention of a specific piece of evidence or category of evidence does not signify the court overlooked it in considering Alvarez's claims.

*January 11, 2015 Terrible's Robbery*

Cal Prange testified that he was working the graveyard shift at a Terrible's convenience store when 3 people came in—a woman and two men. (Exh. 21 at 125-144.) One man went behind him and pressed something to his back or side. He looked down and saw it was a gun. Prange complied when they told him to open the register, which they emptied. The woman said, "He's holding out." She went behind Prange and put a knife up to his neck. They told him to open the safe. He only had a code to get $100 at a time; then the safe would not open for 3 minutes. He took out $100, and they took it. The man with the gun led Prange to the back of the store and told him to stand there for half an hour or they'd come back for him. He identified himself and the three robbers on surveillance video.

*January 19 Rebel Gas Station Robbery*

Leticia Vasquez testified that she was working the night shift at the gas station when a man and a woman came in about 3 a.m. (Exh. 21 at 144-157.) The woman pretended she was going to buy some candy. The man approached her, showed her a gun, and demanded money. Vasquez gave him the money from the safe underneath the cash register. The woman took lighters and put them in a bag. She also had a gun which she placed on the counter. As they left the man warned her not to call the police or they might come back. Vasquez locked the door and called the police and her supervisor. She confirmed that the surveillance video depicted events as she had described.

*January 20 Green Valley Grocery Robbery*

Surveillance video was introduced that showed Shakimbra McDow working as a cashier at the store when three people entered around 3:00 a.m. (Exh. 22 at 141-149.) The video showed Robles with a starter pistol in her hand and McDow raise her hands and back away from the

register while the three took the money and left the store. McDow was unavailable to testify at trial. Las Vegas Metropolitan Police Department ("LVMPD") crime scene analyst Jennifer Reiner testified that she responded to the scene, took photographs, collected latent prints, and impounded Camel Crush cigarettes as evidence. (Exh. 22 at 31-70.) She watched the surveillance video depicting the robbery. Reiner spoke with and took elimination prints from McDow that night. The custodian of records for the store testified that he saw the three videos at the time of the robbery and confirmed they were fair and accurate copies of the original videos. (Exh. 22 at 141-149.)

### *January 21 Green Valley Grocery Attempted Robbery*

James Bayot testified that he was working the overnight shift when two men entered the store and walked right up next to him. (Exh. 21 at 91-125.) One lifted up his shirt to display a gun. The man pointed to the safe. Then he abruptly left the store. He agreed that the surveillance video admitted accurately showed the events. He identified Alvarez in court as the man who had had the gun.

### *January 21 7-Eleven Robbery*

Mario Rios testified that he was working the graveyard shift when a man and a woman came in around 3:30 a.m. (Exh. 21 at 160-183.) The woman was wearing a beanie-type face mask with eyeholes that covered the upper half of her face. The man had a hoodie and a jacket on; he grabbed a SoBe Orange Carrot drink and put it on the counter. Rios went to ring him up; the woman flashed what looked like a knife and said, "Give us your money." Rios went over to the register, opened it with his code, and stepped to the side so they could retrieve the money. The two left, Rios called the police and pressed the emergency button. He walked the jury through the surveillance video and identified Robles in the courtroom.

1  Forensic scientist Heather Gouldthorpe testified that she works in the LVMPD Forensic

2 Laboratory in the Latent Print Detail and that a fingerprint recovered from the SoBe Orange

3 Carrot bottle matched that of Alvarez. (Exh. 22 at 174-203.) She acknowledged that she obtained

4 Alvarez's fingerprints from a database and that no fingerprint cards were obtained from the

5 suspects.

6  ***January 22 7-Eleven Robbery***

7  Heather Lynn Jones testified that she was working at a West Charleston Avenue 7-Eleven

8 when a man came in about 3:30 a.m. (Exh. 22 at 71-94.) He walked toward the beer cooler and a

9 woman popped up beside Jones out of nowhere and told her to go open the register. Jones

10 thought the woman was joking. The woman had a mask that covered the upper half of her face.

11 The two came very close to Jones and steered her toward the register. Another man entered the

12 store. Jones put in her pin and opened the register. The first man kept lifting his shirt saying that

13 this wasn't a joke. Jones assumed he had a gun but was afraid to look. The woman emptied the

14 register. One man took cigarettes from the Camel Crush display. When the three left, Jones

15 walked over to the door to see if she could see what direction they left in while she called 911 on

16 her cell phone. She saw them drive off in a white Nissan Pathfinder. The jury was shown the

17 surveillance video, which depicted the events she had just described.

18  LVMPD officer Richard Nelson testified that he was on patrol about 2:30 a.m. the morning

19 of January 23, 2015, when he saw a white Nissan Pathfinder parked in a business parking lot.

20 (Exh. 22 at 121-141.) He immediately became suspicious because all of the businesses were

21 closed at that hour. He saw a Hispanic male and female outside the vehicle (which fit with the

22 descriptions given of the robbers), and that made him suspect that this was the vehicle police had

23 been looking for. He pulled up and they started walking away in different directions. Nelson

10

called to them to come to his patrol car, and they complied. The man told Nelson he did not have any weapons or anything illegal on him and consented to be searched. Nelson found a Camel cigarette pack in the man's pocket. Additional officers were arriving. A loud thump was heard from the vehicle; officers conducted a felony car stop and called the passengers out. A Hispanic female and a Hispanic male exited the vehicle. Officers took everyone into custody. Nelson found a revolver handgun between the seat and the side panel of the passenger side of the Pathfinder.

LVMPD Detective Kyle Toomer testified that he worked on the robbery detail. (Exh. 22 at 205-237, Exh. 23 at 16-75.) He responded to the scene of the arrest of the Pathfinder occupants. The two men arrested there were Dominguez and Alvarez. Robles was not one of the females present but was arrested later. The jury saw the video of Toomer's interview with Robles. In the interview, Robles was shown stills from surveillance video of the robberies, acknowledged that she was in the videos, and signed some of the photographs acknowledging that they were of her.

### IV.   Remaining Claims for Relief

#### a.   Claims Related to January 20 Green Valley Grocery Robbery

Alvarez raises several claims related to this incident. Shakimbra McDow, the Green Valley Grocery cashier, testified before the grand jury but did not testify at trial. The State did not present her grand jury testimony at trial but relied on the testimony of the LVMPD crime scene analyst who responded to the scene and interacted with McDow and the store's custodian of records to authenticate the surveillance video depicting the robbery. (Exh. 22 at 31-70, 141-149.)

***Ground 3.1(a): appellate counsel was not ineffective for failing to argue that insufficient evidence supported the finding of a firearm***

Alvarez argues that his appellate counsel was ineffective for failing to raise an argument on direct appeal that there was insufficient evidence to support the finding of a firearm. (ECF No. 6 at 12-20.) "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* at 324. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16. On habeas review, this court must assume that the trier of fact resolved any evidentiary conflicts in favor of the prosecution and must defer to such resolution. *Id.* at 326. Generally, the credibility of witnesses is beyond the scope of a review of the sufficiency of the evidence. *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

Affirming the denial of Alvarez's state postconviction habeas petition, the Nevada Court of Appeals rejected his argument that insufficient evidence of a firearm was presented as to counts 1, 3, 10 and 12. The court also held that the district court's findings that he made only a bare and naked allegation that several deadly weapon enhancements would have been reversed on appeal were supported by the record and not clearly wrong and that he failed to demonstrate appellate counsel was ineffective. (Exh. 91 at 5-6.)

Because McDow did not testify about the January 20 Green Valley Grocery robbery at trial, defense counsel argued that the surveillance video did not support the State's position that a firearm was used. (Exh. 25 at 112-114.) The State conceded that they couldn't prove there was a firearm on counts 7 and 9 stemming from that incident. Counsel for Alvarez, Adam Gill, then

argued at length to the court that the State did not present enough evidence on several other

deadly weapon counts for the jury to determine whether a firearm was used. (*Id*. at 118-128.)

The court agreed with the defense regarding two counts and directed that counts 7, 9, 16, and 18

should not include the deadly weapon. The State and defense also agreed to include a jury

instruction that defined "firearm" to give the jury the opportunity to decide whether defendants

used an actual firearm or starter pistol in the robberies. (Exh. 25 at 153, Exh. 28 at 41, jury

instruction no. 18.)

    With respect to the other deadly weapon counts at issue related to 3 robberies, Prange

testified that during the January 11 Terrible's store robbery Alvarez put a "small handgun that

would use a clip" against his back (counts 1, 3). (Exh. 21 at 129.) Prange also testified that he

saw the shape of the gun, and it was a semiautomatic weapon, not a revolver. (*Id*. at 130.) The

trial court instructed the jury that the prosecution was not required to recover the deadly weapon

or to produce the deadly weapon in court to establish that it was used during the commission of

the crime. (Exh. 28 at 25.) Vasquez testified that during the January 19 Rebel Gas Station

robbery Alvarez asked her for the money with a gun in his hand (counts 4, 6). (Exh. 21 at 145.)

Vasquez also testified that Alvarez told her to look at the black gun showing from his pocket and

told her not to scream. (*Id*. at 147). The jury reasonably concluded Alvarez used a firearm in that

robbery. Bayot testified that during the January 21 Green Valley Grocery robbery Alvarez lifted

his shirt and showed him "a little black gun" (counts 10, 12.) (*Id*. at 93.) Sufficient evidence

supported the jury finding that Alvarez used a firearm in these  robberies.

    In his closing arguments, Alvarez's counsel Gill acknowledged to the jury that the State was

not required to recover the deadly weapon itself and present it to the jury. (Exh. 25 at 206-210.)

He argued that the State hadn't proven that Alvarez used a device that could "expel a metal"

(from jury instruction no. 18 defining a firearm) and pointed out that only a starter pistol—not considered a deadly weapon under state law—had been recovered. (*Id*. at 207.)

During the evidentiary hearing on Alvarez's state postconviction habeas petition, Gill testified that the single issue he raised on direct appeal was the trial court's failure to sever Alvarez's trial from his co-defendants. (Exh. 68 at 5-8.) Gill recalled that he argued strenuously in his closing that only a starter pistol had been recovered and that the State failed to prove a deadly weapon was used in several of the robberies. On appeal, he made the strategic decision that the severance issue was the strongest one. He did not think the deadly weapon was a strong issue to pursue. He recalled that his research turned up "a bunch" of cases that did not support his arguments regarding the deadly weapon. (*Id*. at 8.)

Alvarez's counsel successfully argued that the State had not proven that he used a deadly weapon in two of the robberies. The trial court considered and rejected his arguments as to several other deadly weapon counts. Gill made a reasonable, strategic decision not to pursue this issue on direct appeal because he had stronger arguments he sought to highlight. Alvarez has failed to demonstrate that the Nevada Court of Appeals' decision was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 3.1(a).

### *Ground 3.1(b): appellate counsel was not ineffective for failing to argue that certain surveillance video was improperly admitted*

Alvarez contends his counsel was ineffective on appeal for failing to argue that the January 20 Green Valley Grocery surveillance video relating to counts 7, 8, and 9 was improperly admitted because cashier McDow did not testify. (ECF No. 6 at 21-23.)

The Nevada Court of Appeals disagreed:

Alvarez argued the video was not properly authenticated because the custodian of records was unable to identify a victim depicted in the video and Crime Scene Analyst Jennifer Reiner's identification of the victim was based on hearsay. The district court made the following findings. The State made a sufficient showing that the video depicted the events that unfolded on the day in question. CSA Reiner, who interacted with the victim shortly after the crime occurred, testified the victim was the individual who appeared in the video. The jury was free to make reasonable inferences from the video. And it would have been futile for appellate counsel to argue there was insufficient evidence to authenticate the video and that CSA Reiner's identification of the victim was based on hearsay. We conclude these findings are supported by the record and are not clearly wrong, Alvarez failed to demonstrate that appellate counsel was ineffective, and the district court did not err by rejecting this claim. *See Ennis v. State*, 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006) (counsel cannot be deemed ineffective for failing to raise futile claims).

(Exh. 91 at 6.)

At trial, Gill argued that without McDow's testimony, the State could not prove fear of force or violence, an element of robbery. (Exh. 22 at 13-23.) He and co-defendants' counsel also argued that it was insufficient for crime scene analyst Reiner to authenticate the surveillance video. The court ruled that the defense argument about the elements of robbery actually went to the question of sufficiency of the evidence and that the jury was free to watch the video and decide whether it showed that McDow was fearful. The State also agreed to bring in a Green Valley Grocery custodian of records to authenticate the video.

Gill testified during the evidentiary hearing on the state postconviction petition that at trial he initially objected to the admission of surveillance video of the robbery because McDow was unavailable at trial. (Exh. 68 at 8-10.) The court then required the State to bring in the custodian of records to testify about the positioning of the cameras and the recordings themselves. After that Gill said there was not an issue to challenge at trial and he later determined that it was very likely the weakest argument for appeal and didn't even consider raising it. He explained that his

general approach is to focus on the strongest points and not to waste the court's or jury's time advancing weaker arguments. (*Id*. at 14-15.)

The court determines that this claim lacks merit. The custodian of records testified about placement of the cameras and what angles were depicted and that the video was taken on the night in question. Crime scene analyst Reiner testified that she interacted with McDow at the scene, took her fingerprints for elimination purposes, and had McDow sign the fingerprint form and write down her date of birth. Her identification of McDow in surveillance video at trial was not hearsay. Alvarez has not demonstrated that appellate counsel was ineffective for failing to raise a meritless argument. He has failed to show that the Nevada Court of Appeals' decision was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Federal habeas relief is denied as to ground 3.1(b).

### Ground 3.1(c): appellate counsel was not ineffective for not challenging the denial of Alvarez's right to confront McDow

Alvarez argues that appellate counsel was ineffective for failing to raise the denial of Alvarez's right to confront McDow. (ECF No. 6 at 24-25.)

The Nevada Court of Appeals disagreed that counsel was ineffective:

> The district court made the following findings. Although the victim testified before the grand jury, she did not testify at trial and her grand jury testimony was not presented during the trial. Consequently, it would have been futile for appellate counsel to argue that Alvarez's confrontation rights were violated. We conclude these findings are supported by the record and are not clearly wrong, Alvarez failed to demonstrate that appellate counsel was ineffective, and the district court did not err by rejecting this claim. *See Ennis v. State*, 122 Nev. 694, 706, 137 P.3d 1095, 1103 (2006) (counsel cannot be deemed ineffective for failing to raise futile claims).

(Exh. 91 at 6-7.)

Alvarez does not explain how his confrontation rights could have been violated when McDow did not testify at trial and the State did not present her grand jury testimony at trial, so

he has not shown how appellate counsel could have been ineffective for failing to raise a futile confrontation argument. He has not demonstrated that the Nevada Court of Appeals' decision was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). The court, therefore, denies federal habeas relief on ground 3.1(c).

### Ground 3.1(d): appellate counsel was not ineffective for failing to argue that insufficient evidence supported a robbery conviction because McDow did not testify

Alvarez asserts that appellate counsel failed to argue that insufficient evidence supported the robbery conviction for the January 20 Green Valley Grocery robbery because McDow did not testify that she was in fear. (ECF No. 6 at 25-27.)

The Nevada Court of Appeals concluded that counsel was not ineffective:

> Alvarez argued that the State failed to prove the element of fear in count 9 because the victim did not testify that she felt fear. The district court made the following findings. The State presented a surveillance video that depicted the crime. "In the video, the victim was approached by three individuals in the store and she then backed away and put her hands up after being shown what appeared to be a gun." A rational juror could easily have inferred from the victim's actions that she was fearful of injury. And, consequently, any claim to the contrary would have been futile. We conclude these findings are supported by the record and are not clearly wrong, Alvarez failed to demonstrate that appellate counsel was ineffective, and the district court did not err by rejecting this claim. *See id.*; *Jackson*, 443 U.S. at 319.

(Exh. 91 at 7.)

The State played 3 videos for the jury from the incident. (*See* Exh. 25 at 187-190.) The trial transcripts reflect that the videos showed the defendants approach McDow in the store. They show McDow back away from the register and put her hands up as if seeing a gun. They show her facial reaction. A rational juror could have concluded that the videos showed that McDow was fearful. As discussed with ground 3.1(b) Gill testified at the state postconviction evidentiary hearing that he thought challenges to those surveillance videos were weak arguments to raise on appeal. (Exh. 68 at 8-10.) He also noted the circumstantial evidence of the other videos that were

similar to the one involving McDow. Alvarez fails to demonstrate ineffective assistance or

prejudice. Alvarez has failed to show that the Nevada Court of Appeals' decision was contrary to

or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Accordingly, the

court denies federal habeas relief on ground 3.1(d).

> ***Ground 3.1(e): appellate counsel was not ineffective for not raising the claim that the district court erred in denying Alvarez's motion to dismiss and motion for a directed verdict as to counts 7, 8, and 9***

Alvarez claims that appellate counsel failed to argue that the district court erred in denying

Alvarez's motion to dismiss and motion for a directed verdict as to counts 7 through 9. (ECF No.

6 at 27-29.) These counts, stemming from the McDow robbery, were burglary while in

possession of a deadly weapon (7), conspiracy to commit a robbery (8), and robbery with use of

a deadly weapon (9).

The Nevada Court of Appeals reasoned that such challenge would have been futile:

> Alvarez argued the State did not present sufficient evidence of "force of fear," the victim did not testify at trial, and Alvarez was not identified in the surveillance video that was played for the jury. The district court made the following findings. The State presented prima facie cases of the elements for counts 7, 8, and 9. The trial court was free to draw reasonable inferences from the State's evidence when it denied Alvarez's motions to dismiss and for a directed verdict. And a challenge to the district court's denial of these motions on appeal would have been futile. We conclude these findings are supported by the record and are not clearly wrong, Alvarez failed to demonstrate that appellate counsel was ineffective, and the district court did not err by rejecting this claim. *See Ennis*, 122 Nev. at 706, 137 P.3d at 1103; *see generally* NRS 175.381(1); *Middleton v. State*, 114 Nev. 1089, 1105, 968 P.2d 296, 307 (1998) ("The granting of an advisory instruction to acquit rests within the sound discretion of the district court.").

(Exh. 91 at 7-8.)

The properly admitted video showed the defendants enter the store, McDow raise her hands

and back away from the register, money taken from the scene, Robles with a starter pistol,

Alvarez wearing the same jacket as in surveillance from other stores, and Dominguez acting as

lookout. (*See* Exh. 25 at 188-191.) Gill testified at the evidentiary hearing that he made a

strategic decision not to pursue this claim on direct appeal based on the trial court's rejection of

his arguments and his research and review of the case law. (Exh. 68 at 15.) The trial court

concluded that the jury was able to draw reasonable inferences from the evidence presented.

Appellate counsel was not deficient for failing to raise this futile issue on appeal. Alvarez fails to

demonstrate prejudice. He has not shown that the Nevada Court of Appeals' decision was

contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d).

Accordingly, the court denies federal habeas relief on ground 3.1(e).

**b**. **Claim Related to January 21 Green Valley Grocery Attempted Robbery**

*Ground 3.1(f): trial counsel was not ineffective for failing to rebut the in-court identification of Alvarez or for failing to consult with an eyewitness identification expert*

Alvarez argues that trial counsel was ineffective for failing to rebut cashier James Bayot's in-

court identification of Alvarez with available evidence and for failing to consult with and present

the testimony of an eyewitness identification expert. (ECF No. 6 at 29-37.)

The Nevada Court of Appeals determined that Alvarez failed to prove counsel was

ineffective:

> Alvarez argued that counsel should have challenged victim James Bayot's
> identification in two ways. "First, defense counsel should have established that
> during law enforcement's investigation of the case that all of the victims except
> Bayot stated that the assailant had a mustache. Second, defense counsel should
> have consulted with and presented an expert witness regarding the frailties of an
> in-court identification." The district court conducted an evidentiary hearing and
> made the following findings. Bayot observed Alvarez at the time of the crime,
> viewed the surveillance video, and identified him in court. An argument that
> Bayot's identification was invalid because Bayot did not describe the assailant as
> having a mustache would have been pointless. Alvarez did not identify an expert
> witness that would have been willing to testify in his case. And Alvarez did not
> show how the expert witness could have undermined the reliability of the
> witnesses who had identified him in court. We conclude these findings are
> supported by the record and are not clearly wrong, Alvarez failed to meet his

burden to demonstrate that trial counsel was ineffective, and the district court did not err by rejecting this claim.

(Exh. 91 at 3.)

At the postconviction evidentiary hearing, Gill testified that he litigated the issue at trial, and he did not think there was any likelihood of success on the issue on appeal. (Exh. 68 at 10-13.) He said he always considers consulting an eyewitness identification expert. He said that in this case Alvarez was arrested very shortly after a robbery and had several items in the Pathfinder that tied him to the scenes; thus it was not just the cashiers' identifications that placed him at the robberies. The State also presented additional evidence tying him to the scenes. Gill further testified that Alvarez openly admitted his involvement in the crimes, Gill firmly felt it was in Alvarez's best interest to take a deal, and they worked very hard to reach a plea deal. The proffered guilty plea deal required all three defendants to accept but one refused.

Certainly defense counsel could have elicited testimony from Bayot that he did not describe Alvarez to police as having a mustache. But considering the other evidence recovered tying Alvarez to the scenes and the surveillance video, trial counsel was not deficient for failing to challenge the eyewitness identification or consult an expert in eyewitness identification. He has not shown that the Nevada Court of Appeals' decision was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Accordingly, the court denies federal habeas relief on ground 3.1(f).

**c. Claim Related to January 21 7-Eleven Robbery**

***Ground 3.1(g): trial counsel was not ineffective for failing to rebut the in-court identification of Alvarez or for failing to challenge the fingerprint evidence***

1   Alvarez urges that trial counsel was ineffective for failing to rebut the in-court identification

2   of Alvarez with available evidence and for failing to challenge the fingerprint evidence. (ECF

3   No. 6 at 37-46.)

4   Rejecting this claim, the Nevada Court of Appeals explained:

5           Alvarez argued that competent counsel would have moved to exclude the
        fingerprint testimony because it lacked scientific validity and would have
6       challenged the procedures Forensic Scientist Heather Gouldthorpe used to
        determine that his fingerprint was on a bottle. The district court made the
7       following findings. The State established the trustworthiness and reliability of
        fingerprint evidence through the foundational evidence provided by FS
8       Gouldthorpe. Codefendant's trial counsel cross-examined FS Gouldthorpe
        regarding the fallibility of fingerprint analysis. The jury asked a question
9       regarding how many points of similarity are required to make a match and found
        Alvarez guilty after hearing evidence on this issue. And there was no probability
10      that the outcome would have been different if Alvarez's trial counsel had cross-
        examined FS Gouldthorpe regarding the reliability of her fingerprint
11      identification. We conclude these findings are supported by the record and are not
        clearly wrong, Alvarez failed to meet his burden to demonstrate that trial counsel
12      was ineffective, and the district court did not err by rejecting this claim.

13   (Exh. 91 at 3-4.)

14   LVMPD forensic scientist Gouldthorpe testified at trial that she recovered a latent fingerprint

15   from a SoBe bottle left at the 7-Eleven after the January 21 incident and concluded that it

16   matched Alvarez's fingerprint. (Exh. 22 at 184-185.) Alvarez's counsel elicited from

17   Gouldthorpe on cross that she found no match for a fingerprint from the January 11 robbery or

18   for two palm prints from January 20. (*Id*. at 186-188.) He asked her about the verification

19   process for her work. (*Id*. at 199.) Counsel for Dominguez questioned Gouldthorpe about the

20   identification procedures, and she agreed that there have been instances where fingerprints were

21   misidentified. (*Id*. at 188-189.)  On cross-examination by counsel for Robles, Gouldthorpe

22   acknowledged that law enforcement did not fingerprint the suspects in the case and that her

23   match came from a government data base. (*Id*. at 197.) The court read a juror's question about

how many points need to be similar to find a print match, and Gouldthorpe explained the process to meet her department's "suitability criteria." (*Id*. at 201-203.)

Gill testified at the evidentiary hearing that he did not consult with a fingerprint expert in preparation for trial. (Exh. 68 at 13-14.) He again pointed out that it was not in dispute that Alvarez had participated in the robberies. He noted that prints were not recovered from every scene, and he felt that any expert he retained would have given him similar answers as the State's expert. In view of the totality of the evidence, including Alvarez's admissions to Gill and the surveillance videos, he did not think another fingerprint expert would yield anything helpful to the defense. Alvarez has failed to demonstrate that the Nevada Court of Appeals' decision was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Thus, the court denies federal habeas relief on ground 3.1(g).

**d. Remaining Claims**

***Ground 3.1(h): trial counsel was not ineffective in describing the evidence against Alvarez to him***

Alvarez insists that his trial counsel was ineffective in describing the State's evidence, rendering his refusal to take a plea not knowing, voluntary, or intelligent. (ECF No. 6 at 46-48.) He claims that Gill did not inform him of the nature and extent of the evidence against him, failed to show him the videotaped evidence, and failed to explain the likely outcome of going to trial. Alvarez asserts that, but for that lack of information, he would have taken the plea deal.

The Nevada Court of Appeals agreed with the state district court that this was a bare, unsupported assertion and held that Alvarez failed to demonstrate counsel was ineffective:

> The district court made the following findings. Alvarez's claim that trial counsel failed to inform him of the nature and extent of the evidence against him and failed to explain the likely outcome of going to trial was a bare and naked allegation. Alvarez's claim that he would have taken the plea offer if he had seen the evidence is belied by the record. And Alvarez could not have taken the plea

offer because the offer was contingent on acceptance by all of the defendants and one of Alvarez's codefendants had rejected the offer. We conclude these findings are supported by the record and are not clearly wrong, Alvarez failed to meet his burden to demonstrate that trial counsel was ineffective, and the district court did not err by rejecting this claim. *See Mann v. State*, 118 Nev. 351, 354, 46 P.3d 1228, 1230 (2002); *cf. Hargrove v. State*, 100 Nev. 498, 502-03, 686 P.2d 222, 225 (1984) (a petitioner is not entitled to postconviction relief if his claims are bare and lack specific factual allegations).

(Exh. 91 at 4-5.)

At an April 22, 2015, calendar call, counsel for Robles informed the court that she rejected the plea offer. (Exh. 13.) Gill then stated that Alvarez also rejected the offer. Gill testified at the evidentiary hearing that he didn't recall the specifics of the plea deal that had been offered, only that "it was a heck of a lot better then what we ended up with after the trial." (Exh. 68 at 13.) He did remember that he very much wanted to secure a deal and that Alvarez expressed his desire to take a deal but unfortunately it was contingent on all co-defendants agreeing. In response to questioning by the court, Gill said that he had frequent visits with Alvarez to discuss the evidence against him and the strength of that evidence. (*Id*. at 17.) He noted that plea negotiations are usually somewhat fluid and that it is his practice to visit with the client throughout.

The court concludes that this claim is belied by the record. Gill maintained in his testimony at the state postconviction proceedings that he pursued a plea deal, that Alvarez also wanted to take a deal, and that the contingency was what doomed a plea agreement. Alvarez has not shown that the Nevada Court of Appeals' conclusion that this was a bare and naked allegation was contrary to or involved an unreasonable application of *Strickland*. 28 U.S.C. § 2254(d). Thus, the court denies federal habeas relief on ground 3.1(h).

***Ground 3.2: Alvarez has not demonstrated cumulative error***

1    Finally, Alvarez argues that the district court abused its discretion by finding that there was

2   not cumulative error of ineffective assistance of counsel. (ECF No. 6 at 48-49.) The Ninth

3   Circuit has held that the combined effect of multiple trial court errors violates due process where

4   it renders the resulting criminal trial fundamentally unfair. *Parle v. Runnels*, 505 F.3d 922, 927

5   (9th Cir. 2007), citing *Chambers v. Mississippi*, 410 U.S. 284, 298 (1973).

6    The Nevada Court of Appeals rejected this argument in the affirmance of the denial of the

7   state postconviction petition, stating that Alvarez had not demonstrated any error to cumulate.

8   (Exh. 91 at 8.) Respondents argue that cumulative error is not a basis upon which a court can

9   grant habeas relief because 28 U.S.C. § 2254(a) states that habeas relief can only be sought on

10  the basis that the petitioner is in custody in violation of the Constitution, laws, or treaties of the

11  United States. (ECF No. 40 at 29.) In any event, Alvarez did not show that his counsel performed

12  deficiently and that he suffered prejudice as to any of his claims. So there is no error to cumulate.

13  *See Slack v. McDaniel*, 529 U.S. 473, 482 (2002) (when no single Constitutional error exists,

14  nothing can accumulate to the level of a Constitutional violation); *United States v. Romero*, 282

15  F.3d 683, 690 (9th Cir. 2002) (no cumulative error exists where court affirms on all other issues).

16  Alvarez has not shown that cumulative error by his counsel violated his constitutional rights. He

17  has failed to demonstrate that the Nevada Court of Appeals' rejection of his cumulative error

18  claim was contrary to or involved an unreasonable application of law clearly established by the

19  United States Supreme Court. 28 U.S.C. § 2254(d). Accordingly, the court will not grant relief

20  on ground 3.2. The petition, therefore, is denied in its entirety.

21   **V.    Certificate of Appealability**

22   This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing

23  Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA).

Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for

the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Alvarez's petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of Alvarez's petition.

## VI.     Conclusion

**IT IS THEREFORE ORDERED** that the petition **(ECF No. 6) is DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability will not issue.

**IT IS FURTHER ORDERED** the Clerk of the Court substitute Gabriela Najera for respondent William Hutchings.

**IT IS FURTHER ORDERED** that the Clerk enter judgment accordingly and close this case.

DATED this 20th day of July 2023.

_____
KENT J. DAWSON
UNITED STATES DISTRICT JUDGE